**Appeals No. 16-55425**
_____

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**
_____

FREEDOM FROM RELIGION FOUNDATION, INC.,

Plaintiff – Appellee,

vs.

CHINO VALLEY UNIFIED SCHOOL DISTRICT BOARD OF EDUCATION;
and CHINO VALLEY UNIFIED SCHOOL BOARD OF EDUCATION BOARD
MEMBERS JAMES NA, SYLVIA OROZCO, CHARLES DICKIE, ANDREW
CRUZ, IRENE HERNANDEZ-BLAIR, in their official representative capacities,

Defendants-Appellants,

_____

**APPELLANTS' OPENING BRIEF**
_____

On Appeal from the United States District Court
for the Central District of California
Honorable Jesus G. Bernal, Presiding
D.C. No. 5:14-cv-02336-JGB (DTBx)
_____

TYLER & BURSCH, LLP
Robert H. Tyler, CA Bar No. 179572
rtyler@tylerbursch.com
Jennifer L. Bursch, CA Bar No. 245512
jbursch@tylerbursch.com
24910 Las Brisas Road, Suite 110
Murrieta, California 92562
Tel:   (951) 600-2733
Fax:   (951) 600-4996
_____

Attorneys for Defendants-Appellants

CHINO VALLEY UNIFIED SCHOOL DISTRICT BOARD OF
EDUCATION; and CHINO VALLEY UNIFIED SCHOOL BOARD OF
EDUCATION BOARD MEMBERS JAMES NA, SYLVIA OROZCO,
CHARLES DICKIE, ANDREW CRUZ, IRENE HERNANDEZ-BLAIR, in
their official representative capacities
_____

**TABLE OF CONTENTS**

JURISDICTIONAL STATEMENT ..........................................................1

ISSUES PRESENTED..........................................................................1

STATEMENT OF THE CASE................................................................3

SUMMARY OF THE ARGUMENT ......................................................13

STANDARD OF REVIEW ..................................................................15

ARGUMENT ......................................................................................16

I.    The prayers offered at the start of the Board of Education
meetings were constitutionally permissible, legislative prayers
under *Marsh* and *Town of Greece* .......................................16

    A.    Legislative Prayer ...................................................17

        1.    The Legislative prayer exception was established
for State Legislatures and "other deliberative
bodies" .........................................................17

        2.    The Supreme Court extended the Legislative
prayer exception to local legislative bodies. .................18

        3.    School Boards are local deliberative bodies to
which legislative prayer exception applies....................20

            a.    School Boards are deliberative public bodies......20

            b.    School Board Prayer Cases .................................26

i

      i.  Bacus v. Palo Verde Unified Sch.

         Dist. .........................................................26

      ii.  Coles v. Cleveland Board of

         Education .................................................27

      iii.  Doe v. Indian River Sch. Dist. ..................28

      iv.  Coles and Indian River are not

         applicable ..................................................30

  B.  School Prayer Line of Cases .....................................32

II. The Board's practice of allowing invocational speakers does not

violate the Establishment Clause ..........................................................36

  A.  The Lemon test ..........................................................36

  B.  The Policy satisfies the traditional *Lemon* test factors .............39

    1.  Secular purpose ..............................................39

      a.  The "overtly religious, and proselytizing

        statements" ..........................................40

      b.  Alternative ways to solemnize a board

        meeting. ................................................44

    2.  Endorsement of religion .................................46

  C.  The Policy does not coerce anyone to participate in

religion or its exercise. .............................................49

III.  The District Court's Judgment is an Unreasonable Content

Based Restriction in a Limited Public Forum. ...................................51

IV.  The Portion of the Judgment Relating to Bible Readings and

Proselytization is Moot........................................................................54

V.  Conclusion and Prayer. .......................................................................58

# TABLE OF AUTHORITIES

**Cases**                                                                     **Page(s)**

*Access Fund v. USDA*,
  499 F.3d 1036 (9th Cir. 2007) ..................................................... 36, 39

*Adler v. Duval County Sch. Bd.*,
  250 F.3d 1330 (11th Cir.) ............................................................... 32

*Ah Quin v. County of Kauai Dept. of Transp.*,
  733 F.3d 267 (9th Cir. 2013) ......................................................... 15

*Am. Humanist Ass'n v. S. Carolina Dept. of Educ.*,
  2015 WL 1268036 (D.S.C. Feb. 18, 2015) ..................................... 38

*Am. Humanist Ass'n v. McCarty*,
  2017 U.S. App. LEXIS 4922 (5th Cir. 2017) ............... 20, 21, 23, 24, 25, 26, 30

*American Civil Liberties Union of Nev. v. City of Las Vegas*,
  333 F.3d 1092 (9th Cir. 2003) ....................................................... 16

*Arkansas Educ. Television Comm'n v. Forbes*,
  523 U.S. 666 (1998) .................................................................. 52, 54

*Baca v. Moreno Valley Unified Sch. Dist.*,
  936 F.Supp. 719 (C.D.Cal.1996) ................................................. 52, 53

*Bacus v. Palo Verde Unified Sch. Dist. Bd. of Educ.*,
  52 Fed. Appx. 355 (9th Cir. 2002) ................................................ 26

*Burke v. Barnes*,
  479 U.S. 361 (1987) ...................................................................... 56

*Card v. City of Everett*,
  520 F.3d 1009 (9th Cir. 2008) ...................................................... 37

*Chambers to Make School Board Prayer Unconstitutional*,
  101 GEO. L.J. 839 (2013) ........................................................ 31, 34

*Chandler v. Siegelman*,
  230 F.3d 1313 (11th Cir. 2000) ..................................................... 32

*City of Madison, Joint School Dist. No. 8 v. Wisconsin Employment Relations Commission*,
  429 U.S. 167 (1976) ...................................................................... 51

*Coles v. Cleveland Bd. of Educ.*,
  171 F.3d 369 (6th Cir. 1999) ............................ 20, 25, 27, 28, 30, 45

*Cornelius v. NAACP Legal Def. & Educ. Fund*,
  473 U.S. 788 (1985) ...................................................................... 54

*Diffenderfer v. Central Baptist Church*,
  404 U.S. 412 (1972) ...................................................................... 56

iv

**Cases**                                                                      **Page(s)**

*DiLoreto v. Downey Unified Sch. Dist. Bd. of Educ.*,
  196 F.3d 958 (9th Cir. 1999) ................................................... 52

*Doe v. Duncanville Indep. Sch. Dist.*,
  994 F.3d 160 (5th Cir. 1993) ................................................... 33

*Doe v. Indian River School District*,
  653 F.3d 256 (3d Cir. 2011) ..................................... 20, 28, 29, 30, 31

*Doe v. Tangipahoa Parish Sch. Bd.*,
  473 F.3d 188 (5th Cir. 2006) ................................................... 25

*Edwards v. Aguillard*,
  482 U.S. 578 (1987) ....................................................... 39, 40, 42

*Elmbrook Sch. Dist. v. Doe*,
  134 S. Ct. 2283 (2014) .......................................................... 38

*Engel v. Vitale*,
  370 U.S. 421 (1962) ............................................................. 33

*Foster v. Carson*,
  347 F.3d 742 (9th Cir. 2003) ................................................ 56-57

*Galloway v. Town of Greece*,
  681 F.3d 20 (2d Cir. 2012) ................................................... 34-35

*Get Outdoors II, LLC v. City of Chula Vista*,
  407 F. Supp. 2d 1172 (S.D. Cal. 2005) .......................................... 55

*Good News Club v. Milford Central School*,
  533 U.S. 98 (2001) ............................................................. 53

*Guerin v. Winston Indus., Inc.*
  316 F.3d 879 (9th Cir. 2002) ................................................... 15

*Indian River Sch. Dist.*,
  685 F.Supp.2d ................................................................... 32

*Ingebretsen on Behalf of Ingebretsen v. Jackson Pub. Sch. Dist.*,
  88 F.3d 274 (5th Cir.) .......................................................... 32

*Jacobus v. Alaska*,
  338 F.3d 1095 (9th Cir.2003) ................................................... 55

*Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*,
  508 U.S. 384 (1993) ............................................................. 37

*Lawrence v. Dep't of Interior*,
  525 F.3d 916 (9th Cir. 2008) ................................................... 15

*Lee v. Weisman*,
  505 U.S. 577 (1992) ................................................ 16, 33, 49, 50, 51

**Cases**                                                    **Page(s)**

*Lemon v. Kurtzman,*
   403 U.S. 602 (1971) ................................................................... 39

*Leventhal v. Vista Unified School Dist.,*
   973 F.Supp. 951 (S.D. Cal. 1997) ........................................ 52

*Marsh v. Chambers,*
   463 U.S. 783 (1987) .......................................... 16, 17, 18, 25

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
   475 U.S. 574 (1986) ............................................................... 16

*Native Village of Noatak v. Blatchford,*
   38 F.3d 1505 (9th Cir.1994)........................................... 57, 58

*Padfield v. AIG Life Ins. Co.,*
   290 F.3d 1121 (9th Cir. 2002) ............................................ 15

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n,*
   460 U.S. 37 (1983) ................................................................. 52

*Princeton University v. Schmid,*
   455 U.S. 100 (1982) .............................................................. 56

*Rabkin v. Oregon Health Sciences Univ.,*
   350 F.3d 967 (9th Cir. 2003) .............................................. 15

*Santa Fe Indep. Sch. Dist. v. Doe,*
   530 U.S. 290 (2000) ................................................. 16, 33, 40

*Sch. Dist. of Abington Twp., Pa v. Schempp,*
   374 U.S. 203 (1963) ...................................................... 16, 33

*Town of Greece v. Galloway,*
   132. S.Ct. 1811 (2014) ..................................................... 16, 46

*Trunk v. City of San Diego,*
   629 F.3d 1099 (9th Cir. 2011) ..................................... 39, 46

*Wallace v. Jaffree,*
   472 U.S. 38 (1985) ...........................................33, 39, 40, 41

*Wash. Mut. Inc. v. United States,*
   636 F.3d 1207 (9th Cir. 2011) .......................................... 15

*Wyoming v. U.S. Dep't of Agr.,*
   414 F.3d 1207 (10th Cir. 2005) ........................................ 56

**Statutes**                                                 **Page(s)**

28 U.S.C. § 1291 ........................................................................ 1

28 U.S.C § 1331 ......................................................................... 1

**Statutes**                                                    **Page(s)**

42 U.S.C. § 1983 ..................................................................... 1

Cal. Educ. Code § 35012 ................................... 5, 22, 23, 31

Cal Educ. Code § 35145.5 .............................................. 54

Cal. Educ. Code § 35160 ............................................. 5, 22

Cal. Educ. Code § 35162 ................................................. 7

Cal. Educ. Code § 35164 ................................................ 23

Cal. Educ. Code § 35170 ................................................. 7

Cal. Gov't Code § 54954.3 ..........................................23, 51

Cal. Gov't Code § 54950 ........................................... 24, 25

Cal. Gov't Code § 54951 ................................................ 22

Cal. Gov't Code § 54952 ........................................... 22, 34

Cal. Gov't Code § 54952.2 ............................................... 8

Cal Gov't Code § 54954.3 ............................................ 7, 52

## JURISDICTIONAL STATEMENT

The district court had jurisdiction of this civil action arising under the United States Constitution pursuant to 28 U.S.C § 1331 & 1343(a)(3) because this case involves a First Amendment Establishment Clause challenge brought pursuant to 42 U.S.C. § 1983.

28 U.S.C. § 1291provides jurisdiction on appeal from a final order of the district court. This is an appeal from an order denying Defendants-Appellants' motion for summary judgment and granting, in part, Plaintiffs-Appellees' motion for summary judgment. Thus, this appeal is from a final order.

The district court's order granting Plaintiffs-Appellees' motion for summary judgment and denying Defendants-Appellants' motion for summary judgment was entered on February 18, 2016. (Volume 1, Excerpts of Record ("EOR.") 30-31.) The district court entered judgment on February 18, 2016. Defendants-Appellants timely appealed on March 16, 2016, within thirty days of entry of judgment. (1 EOR 1, p.1.)

## ISSUES PRESENTED

1.     The Supreme Court in *Marsh v. Chambers* and *Town of Greece v. Galloway* recognized a legislative prayer exception, permitting religious prayers before deliberative, legislative bodies. The Chino Valley School District Board of Education is a deliberative, legislative body. It adopted a policy permitting

1

invocations prior to its board meetings. Does the legislative prayer exception apply in this case?

2.      If the legislative prayer exception does not apply in this case, did the Board's policy permitting invocations prior to its board meetings violate the Establishment Clause?

3.      California law creates a limited public forum for members of the public to address school boards. The district court's judgment prohibits members of the public from praying or expressing prayers during the public comment portion of board of education meetings. Does the Judgment violate the Free Speech Clause?

4.      The declaratory judgment entered by the district court declared the Board's custom of reciting Bible verses and proselytization unconstitutional. Subsequent to the judgment, the Board of Education adopted a bylaw stating that "Board members shall not proselytize, and shall be neutral towards religion and/or nonreligion." The new bylaw also mandated that board members not discuss religion or religious perspective unless those topics are germane to agenda items of public comments. Is the Bible verse and proselytization portion of the declaratory judgment moot?

## STATEMENT OF THE CASE

### Procedural History

This is a suit challenging the Chino Valley Unified School District Board of Education's policy of permitting an invocation to solemnize and open its board meetings. (EOR 4.) On December 15, 2014, the Freedom From Religion Foundation, together with several other Plaintiffs, filed their operative First Amended Complaint against Chino Valley Unified School District Board of Education and its board members – James Na, Sylvia Orozco, Charles Dickie, Andrew Cruz, and Irene Hernandez-Blair. (1 EOR. 2, p. 4-5; 2 EOR. 5, p. 34-35.)

Plaintiffs-Appellees allege that the Board of Education and its members violated the Establishment Clause by inviting and permitting invocations by religious leaders at the beginning of its school board meetings.[1] (1 EOR. 2, p. 4; 2 EOR. 5, p. 34-35.) Plaintiffs-Appellees sought damages, declaratory relief, and an injunction preventing the Board of Education and its members from permitting what Plaintiffs-Appellees considered to be school-sponsored prayer, and other religious speech. (1 EOR. 2, p. 4.)

---

[1]  The First Amended Complaint asserted four grounds for relief. One of which was a violation of the Establishment Clause. Only the Establishment Clause ground for relief is discussed because that is the ground on which the order and judgment appealed from were based.

Both parties filed motions for summary judgment. (1 EOR. 2, p. 4.) The Court heard oral argument on both motions on November 16, 2015, and took the matter under submission. (4 EOR. 28, p. 483.) On February 18, 2016, the district court entered an order denying the Board of Education's motion for summary judgment, and granting, in part, Plaintiffs-Appellees' motion for summary judgment. (1 EOR. 2, p. 4-29.) The district court's order dismissed Plaintiffs-Appellees' state law claims against all Defendant-Appellants. (1 EOR. 2, p. 16.) In addition, the district-court dismissed the Board of Education with prejudice based on Eleventh Amendment Immunity. (1 EOR. 2, p. 15.) But, the district court ruled against the Board members in their individual capacities on the Plaintiff-Appellees' federal claims.

On February 18, 2016, the court entered judgment declaring the Board of Education's prayer policy and custom of reciting Bible verses and proselytization in violation of the Plaintiffs' first amendment rights. (1 EOR. 3, p. 30-31.) The judgment also enjoined Board of Education members, James Na, Sylvia Orozco, Andrew Cruz, and Irene Hernandez-Blair (Charles Dickie was not included in the judgment because he is no longer on the Board) from "conducting, permitting or otherwise endorsing school-sponsored prayer in Board meetings." (1 EOR. 3, p. 30-31.)

On March 16, 2016, the Board of Education and James Na, Sylvia Orozco, Andrew Cruz, and Irene Hernandez-Blair brought this appeal. (1 EOR. 1, p. 1.) After bringing its appeal, the Board of Education adopted a bylaw which states:

> 1. During the public portion of the Board meeting, Board members may discuss religion or religious perspectives to the extent that they are germane to agenda items or public comments.
>
> 2. When acting in their official capacities and when speaking on behalf of the District, Board members shall not proselytize, and shall be neutral towards religion and/or non-religion.

[2 EOR. 4, p. 33.]

## Statement of Facts

The governing body of the Chino Valley Unified School District is the Board of Education. (3 EOR. 9, p. 400; *see also Cal. Educ. Code* § 35160.) The Board of Education is comprised of five board members. (3 EOR. 9, p. 464; *see also Cal. Educ. Code* § 35012.) The board members are not public employees, but are publicly elected officials. (*Id.*) Defendant-Appellants, Hernandez-Blair, Na, Cruz, and Orozco are currently Board of Education members.

The Board of Education has myriad responsibilities, which are generally listed in Board Bylaw 9000(a). (3 EOR. 9, p. 400-403.) In addition to the Board Bylaws, California State law confers additional authority and power to the Board of

Education. (*See*, *Cal. Educ. Code* § 35160 *et seq.*) The duties and responsibilities of the Board of Education include:

- Approving budgets (3 EOR. 9, p. 145, 400);

- Creating policies to ensure proper accounting (3 EOR. 9, p. 401);

- Performing audits (3 EOR. 9, p. 401);

- Authorizing expenditures of funds (3 EOR. 9, p. 148, 156, 166, 401);

- Approving courses of study and curricula (3 EOR. 9, 155, 401);

- Appointing all school district personnel (3 EOR. 9, p. 152, 162, 172, 177, 190, 402);

- Establishing salaries for district employees (3 EOR. 9, p. 402);

- Adjudicating employee grievances/claims (3 EOR. 9, p. 148, 177, 185, 194, 402);

- Adjudicating student discipline issues (3 EOR. 9, p. 143, 152, 162, 172, 181, 190, 196);

- Adjudicating employee discipline issues (3 EOR. 9, p. 143, 152, 162, 172, 181, 190);

- Negotiating labor contracts (3 EOR. 9, p. 143, 152, 162, 172, 181, 190);

- Appointing committee members (3 EOR. 9, p. 145, 175);

- Revising Board Bylaws and Policies (3 EOR. 9, p. 146, 157, 167, 176);

- Adopting school calendars (3 EOR. 9, p. 147);

- Negotiating and approving license agreements (3 EOR. 9, p. 147, 156);

- Hiring contractors (3 EOR. 9, p. 147, 176, 185);

- Approving sales of district property (3 EOR. 9, p. 148, 156, 176, 185, 194);

- Settling litigated claims (3 EOR. 9, p. 148, 177. 185, 194);

- Adopting administrative regulations (3 EOR. 9, p. 154);

- Bringing/defending legal action and lawsuits (3 EOR. 9, p. 166, 176, 185; *Cal. Educ. Code* § 35162); and

- Securing copyrights (*Cal. Educ. Code* § 35170).

In the discharge of its duties and obligations, the Board of Education is obliged to meet twice per month.[2] (3 EOR. 9, p. 414.) Meetings of the Board of Education are typically held at the District's offices located at 5130 Riverside Drive, in Chino California. (3 EOR. 9, p. 414.) But meetings may occur anywhere within the District boundaries. (3 EOR. 9, p. 418.)

As a deliberative, legislative body, the Board of Education is subject to California's open meeting laws – also known as the "Brown Act". (3 EOR. 9, p. 414.) Therefore, meetings of the Board of Education are required to be held in public. (EOR. 339.) The Board of Education is obliged to provide an opportunity for

---

[2] In the months of July and August the Board is only obliged to meet once. (EOR 339)

members of the public to address the Board of Education on any item of interest to the public. (3 EOR. 9, p. 414; *see also*, *Cal Gov't Code* § 54954.3.)

In addition to the publicly elected board members, the Board of Education also has one student member. (3 EOR. 9, p. 405-06.) Although the student member is recognized as full member of the Board, he or she is not required to attend any of the Board of Education meetings, and may not attend closed session meetings. (3 EOR. 9, p. 284, 320, 346, 355, 375, 405.) In fact, student members are free to come and go as they please. (3 EOR. 9, p. 178, 307, 405.)

The Board is restricted by its Bylaws and California State law from deliberating on agenda items outside of a normal or special meeting of the Board of Education. (EOR 339; *Cal. Gov't Code* § 54952.2.) Therefore, at the end of every meeting, board members are given the opportunity to deliberate, debate, or otherwise comment on issues raised during the meeting. (3 EOR. 9, p. 149-50, 157-58, 167-68, 177-79, 186-87, 195-97, 204-05, 212-13, 222-223, 233-34, 243-44, 251-52, 261-62, 270-72, 279-80, 287-89, 296-99, 307-08, 316-17.) During this portion of the public meeting, the board members express a wide variety of opinions and beliefs. (*Id*.) In all cases, the comments made by board members are directly related to agenda items, community news, issues of public concern, or communications to the Board of Education in writing or orally during the meeting. (*Id*.)

The Board of Education had a practice of inviting members of all local clergy from all faiths to provide invocations at its meetings. (3 EOR. 9, p. 423.) On October 17, 2013, the Board of Education formalized this practice by adopting Resolution 2013/2014-11 (the "Policy"). (3 EOR. 9, p. 423-429.) The Policy recognized the historical tradition of invocations to solemnize meetings of legislative bodies, as confirmed by Supreme Court precedent, including *Marsh v. Chambers* and *Town of Greece v. Galloway*. (3 EOR. 9, p. 423-24.) Based on the historical tradition, Supreme Court precedent, and its own history of allowing invocations during its meetings, the Policy states:

> 1.  In order to solemnize proceedings of the Board of Education, it is the policy of the Board of Education to allow for an invocation or prayer to be offered at its meetings for the benefit of the Board of Education and the community.
>
> 2.  The prayer shall not be listed or recognized as an agenda item for the meeting so that it may be clear the prayer is not considered a part of the public business.
>
> 3.  No member of the Board of Education or District employee or any other person in attendance at the meeting shall be required to participate in any prayer that is offered.
>
> 4.  The prayer shall be voluntarily delivered by an eligible member of the clergy or a religious leader in the boundaries of the Chino Valley Unified School District. To ensure that such person (the "invocational speaker") is selected from among a wide pool of the District's clergy/religious leaders, on a rotating basis, the invocational speaker shall be selected according to the following procedure:

a. The Superintendent's designee shall compile and maintain a database (the "Congregations List") of the religious congregations with an established presence in the boundaries of the Chino Valley Unified School District.

b. The Congregations List shall be compiled by referencing the listing for "churches," "congregations," or other religious assemblies in the annual Yellow Pages telephone directory or directories published for the Chino Valley Unified School District, research from the Internet, and consultation with local chambers of commerce. All churches, congregations or other religious assemblies with an established presence in the boundaries of the Chino Valley Unified School District are eligible to be included in the Congregations List, and any such church, congregation or religious assembly can confirm its inclusion by specific written request to the Superintendent's designee.

. . . .

e. Within thirty (30) days of the effective date of this policy, and on or about December 1 of each calendar year thereafter, the Superintendent's designee shall mail an invitation addressed to the "religious leader" of each church, congregation or religious assembly listed on the Congregations List, as well as to the individual chaplains included on the Congregations List.

. . . .

g. Consistent with paragraph 7 hereof and, as the invitation letter indicates, the respondents to the invitation shall be scheduled on a first-come, first-served, or other random basis to deliver the prayers.

. . . .

6. The Superintendent's designee shall make every reasonable effort to ensure that a variety of eligible invocational speakers are scheduled for the Board of Education meetings. In any event, no invocational speaker

shall be selected to offer a prayer at consecutive meetings of the Board of Education or at more than three (3) Board of Education Meetings in any calendar year.

7. Neither the Board of Education nor the Superintendent's designee shall engage in any prior inquiry, review of, or involvement in, the content of any prayer to be offered by an invocational speaker.

8. The Board President shall introduce the invocational speaker and the person selected to recite the Pledge of Allegiance and invite only those persons who wish to participate.

9. This policy is not intended, and shall not be implemented or construed in any way, to affiliate the Board of Education with, nor express the Board of Education's preference for, any faith or religious denomination. Rather, this policy is intended to acknowledge and express the Board of Education's respect for the diversity of religious denominations and faiths represented and practices among the citizens who reside in the Chino Valley Unified School District.

[3 EOR. 9, p. 425-27.]

The Policy was unanimously passed by a 5-0 vote of the board members. (3 EOR. 9, p. 165.) The Policy specifies that the prayer not be listed or recognized as an agenda item "so that it may be clear that the prayer is not considered a part of the public business." (3 EOR. 9, p. 425.) The Policy also exempts board members, District employees, and any member of the public from participating in any prayer offered. (3 EOR. 9, p. 425.) The Policy was passed "to acknowledge and express the Board of Education's respect for the diversity of religious denominations and faiths

represented and practices among the citizens who reside in the [District]." (3 EOR. 9, p. 427.)

To achieve religiously diverse invocations, the Board of Education invites all clergy or religious leaders with an established presence in the District's boundaries. (3 EOR. 9, p. 425, 460, 471-72.) Indeed, the invocations during board meetings, although mostly Christian, have been diverse. (3 EOR. 9, p. 208, 311(Hindu invocation); 374 (Muslim invocation).) The invitation to clergy and religious leaders instructs them that "[t]his opportunity is voluntary, and you are free to offer the invocation according to the dictates of your own conscience. To maintain a spirit of respect and ecumenism, the Board of Education requests only that the prayer opportunity not be exploited as an effort to convert others to the particular faith of the invocational speaker, nor to disparage any faith or belief different from that of the invocational speaker." (3 EOR. 9, p. 426.) Although the Policy refers to invocations by members of clergy or religious leaders, non-clergy, private citizens have also offered invocations. (3 EOR. 9, p. 247, 255, 265.) On rare occasions, such as during special meeting of the Board of Education, board members have delivered invocations when a member of the clergy or religious leader was not present. (3 EOR. 9, p. 160, 170, 237, 275, 355.)

## SUMMARY OF THE ARGUMENT

The district court concluded that Appellants violated the Establishment Clause by permitting prayers during the ceremonial portion of school board meetings. The district court erred because school boards are deliberative public bodies that qualify for the legislative prayer exception.

The Supreme Court in *Marsh* and *Town of Greece* found that prayers before deliberative public bodies are constitutional, legislative prayers to which the traditional *Lemon* test does not apply. The Fifth Circuit recently held that prayers delivered by elementary and middle school students during the ceremonial portion of school board meetings do not violate the Establishment Clause. The Fifth Circuit reasoned that school boards are deliberative public bodies to which the legislative prayer exception applies.

The district court entered its judgment before the Fifth Circuit's ruling and relied on two cases from the Third and Sixth Circuits, which held that prayer during school board meetings is analyzed under the school-prayer line of Supreme Court cases, not the legislative-prayer cases. But both the Third and Sixth Circuit cases were decided prior to *Town of Greece* and contain facts that are significantly different from this case.

The line of cases concerning prayer in school-sponsored, student centered activities do not apply to opening prayers at school board meetings. School boards

are not the same as a school-sponsored, student-centered event or activity. Instead, California law specifies that school boards are legislative bodies composed of publicly elected officials. A meeting of elected officials to deliberate concerning various issues such as construction contracts, administrative regulations, employment decisions, and school policies is significantly different than a classroom setting or school sponsored event such as a graduation or extra-curricular activity.

Even if the traditional *Lemon* test applies in this case, the Board's policy did not violate the Establishment Clause. The Policy was adopted to solemnize the board meetings, and to respect the diversity of religious belief within the boundaries of the school district. Both are secular purposes. Nothing in the policy itself endorses a particular religion. Moreover, religious comments made by two Board members occurred after the Policy was adopted, and were typically in response to comments and concerns recited by members of the public during board meetings. Thus, a reasonable observer, familiar with the history and context of the Policy and the statements made by the two Board members, would not conclude that the whole Board had endorsed religion.

Even if the Policy violates the Establishment Clause, the district court's order is unconstitutionally overbroad because it is a content based restriction on public comments in a limited public forum.

Additionally, the remaining portions of the district court's judgment concerning Bible reading and proselytization have been mooted by the Board's subsequent adoption of Bylaw 9010.5.

## STANDARD OF REVIEW

An order granting or denying summary judgment generally is reviewed *de novo*. *Ah Quin v. County of Kauai Dept. of Transp.*, 733 F.3d 267, 270 (9th Cir. 2013) (order granting summary judgment); *Guerin v. Winston Indus., Inc.*, 316 F.3d 879, 882 (9th Cir. 2002) (order granting partial summary judgment)*; Padfield v. AIG Life Ins. Co.*, 290 F.3d 1121, 1124 (9th Cir. 2002) (order denying summary judgment). *De novo* review means that this court views the case from the same position as the district court. *See Lawrence v. Dep't of Interior*, 525 F.3d 916, 920 (9th Cir. 2008). Because the Ninth Circuit must consider the matter anew, no deference is given to the district court. *See Rabkin v. Oregon Health Sciences Univ.*, 350 F.3d 967, 971 (9th Cir. 2003) ("[w]hen de novo review is compelled, no form of appellate deference is acceptable").

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Wash. Mut. Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011).

Material facts are those that may affect the outcome of the case. *Id.* at 248. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Moreover, in reviewing rulings on cross-motions for summary judgment, the appellate court evaluates each motion separately, "giving the nonmoving party in each instance the benefit of all reasonable inferences." *American Civil Liberties Union of Nev. v. City of Las Vegas*, 333 F.3d 1092, 1097 (9th Cir. 2003). "[T]he inferences to be drawn from the underlying facts …. must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## **ARGUMENT**

## I.   **The prayers offered at the start of the Board of Education meetings were constitutionally permissible, legislative prayers under *Marsh* and *Town of Greece***

The district court held that the *Marsh/Town of Greece* legislative prayer exception does not apply to school boards. (1 EOR. 2, p. 20-26.) Instead, the court evaluated the Policy under the line of school-prayer cases, such as *Santa Fe, Lee,* and *Schempp*. *Town of Greece v. Galloway*, 134 S.Ct. 1811 (2014); *Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290 (2000); *Lee v. Weisman*, 505 U.S. 577 (1992); *Marsh v. Chambers*, 463 U.S. 783 (1987); *Sch. Dist. of Abington Twp., Pa v. Schempp*, 374 U.S. 203 (1963). The district court erred. The line of cases concerning prayers at

school do not apply to opening prayers at the Board of Education meetings because those prayers are constitutionally permissible legislative-prayers.

**A.**     **Legislative Prayer**

**1.**     **The Legislative prayer exception was established for State Legislatures and "other deliberative bodies"**

In *Marsh*, the Nebraska state legislature opened each session with a prayer. *Marsh v. Chambers*, 463 U.S. 783, 784-85 (1983). A citizen sued, claiming the practice violated the Establishment Clause. *Id.* at 785. Relying on the "deeply embedded" history and tradition of our country, the Supreme Court held that the practice of allowing opening prayers for a legislative body or "other deliberative public bodies" did not violate the Establishment Clause. *Id.* at 786, 795. Indeed, the Court found that the Framers of the Constitution "did not consider opening prayers as a proselytizing activity or as symbolically placing the government's official seal of approval on one religious view. . . . Rather, the Founding Fathers looked at invocations as 'conduct whose . . . effect . . . harmonized with the tenets of some or all religions." *Id.* at 792 (quoting *McGowan v. Maryland,* 366 U.S. 420, 442 (1961).)

The historical legislative prayer practice of our country's First Congress was also seen in the States' congressional assemblies. *See Marsh,* 463 U.S. at 790-91. The Court found it would be incongruous to interpret the First Amendment as imposing more stringent limits on the States than on the federal government. *Id.* "In

light of the unambiguous and unbroken history of more than 200 years, there can be no doubt that the practice of opening legislative sessions with prayer has become part of the fabric of our society." *Id.* at 792. Such prayers are simply a "tolerable acknowledgement of beliefs widely held among the people of our country." *Id.* Thus, the Court found legislative prayers to be constitutional. *Id.*

## 2. The Supreme Court extended the Legislative prayer exception to local legislative bodies.

In *Town of Greece v. Galloway*, the Supreme Court extended the *Marsh* legislative prayer exception to local legislative bodies – in particular, a town board meeting. *Town of Greece v. Galloway,* 134 S.Ct. 1811, 1827-28 (2014). In *Town of Greece*, a town in New York began its monthly town board meetings with a prayer offered by unpaid volunteers. *Id.* at 1816. Over the years, some of the prayers were given from a distinctly Christian viewpoint – ending prayers with "in Jesus' name" or referring to the cross, resurrection, Biblical scripture, or Christian holy days. *Id.* at 1816-17. Two women who attended the meetings complained that the prayers were offensive to them and sued the town, alleging violations of the Establishment Clause. *Id.* at 1817.

The Supreme Court, applying the *Marsh* precedent, held that the town's practice of opening its monthly board meetings with a prayer did not violate the Constitution. *Id.* at 1815, 1827-28. In so holding, the Court noted that legislative

18

prayer "lends gravity to public business, reminds lawmakers to transcend petty differences in pursuit of a higher purpose, and expresses a common aspiration to a just and peaceful society." *Id.* at 1818. Although no information was provided as to how many local legislative bodies opened their meetings with prayer or for how long those bodies had done so, the practice of legislative prayer was considered to have "historical precedent." *Id.* at 1819.

The Court noted that citizens attend town meetings to accept awards, speak on matters of local importance, and petition the board for action that may affect their economic interests. *Id.* at 1825. Of particular note was the fact that the prayers were delivered during the "ceremonial portion" of the meeting; the board was not engaged in policymaking at the time of the prayers, but in more general functions such as inducting high school athletes into the town hall of fame or swearing in new police officers. *Id.* at 1827. These "ceremonial" prayers were simply a "recognition that, since this Nation was founded and until the present day, many Americans deem that their own existence must be understood by precepts far beyond the authority of government to alter or define. . . ." *Id.*

According to the Court, "legislative prayer has become part of our heritage and tradition, part of our expressive idiom, similar to the Pledge of Allegiance, inaugural prayer, or the recitation of 'God save the United States and this honorable Court.'" *Id.* at 1825. The public is not the intended audience for these prayers, but

the lawmakers themselves, "who may find that a moment of prayer or quiet reflection sets the mind to a higher purpose and thereby eases the task of governing." *Id.* "It is presumed that the reasonable observer is acquainted with this tradition and understands that its purposes are to lend gravity to public proceedings and to acknowledge the place religion holds in the lives of many private citizens. . . ." *Id.*

### 3. School Boards are local deliberative bodies to which legislative prayer exception applies

#### a. School Boards are deliberative public bodies

Before *Town of Greece* only two circuit courts had considered the issue of whether a school board meeting was the kind of deliberative public body to which the legislative-prayer exception applied. *Doe v. Indian River School District*, 653 F.3d 256 (3d Cir. 2011) *cert. denied*, 132 S. Ct. 1097 (2012); *Coles v. Cleveland Bd. of Educ.,* 171 F.3d 369, 387 (6th Cir. 1999). The Sixth Circuit considered this issue "squarely between the proverbial rock and a hard place." *Coles* 171 F.3d at 371. Fortunately after *Town of Greece* the analysis is much clearer. Only the Fifth Circuit has considered this issue after *Town of Greece*.

In a Fifth Circuit case, *Am. Humanist Ass'n v. McCarty*, the school board invited elementary and middle school students to begin its monthly school board meetings with an invocation. *Am. Humanist Ass'n v. McCarty*, 2017 U.S. App. LEXIS 4922, *5, 851 F.3d 521 (5th Cir. 2017). The invocations were usually

religious in nature, often referencing "Jesus" or "Christ". *Id*. The board meetings all occurred on school-owned property, and the board often received students for award ceremonies or for band and choir performances.  *Id*. at *5. Board members would occasionally ask attendees, including students, to stand for the invocation, and board members would often stand and bow their heads for the prayer. *Id*. at * 10-11, 15. The prayers occurred during the ceremonial portion of the meeting just after the pledge of allegiance. *Id*. at * 5, 10. The prayers recited were solemn and respectful in tone, and most of the attendees were mature adults. *Id*. at * 10. The members of the public attending the meetings were not dissuaded from leaving the meeting room during the prayer, arriving late, or even making a later protest. *Id*. at 10.

The Fifth Circuit applied the legislative prayer exception and found that school boards are "more like a legislature than a school classroom or event" because school boards are:

charged with overseeing the district's public schools, adopting budgets, collecting taxes, conducting elections, issuing bonds, and other tasks that are undeniably legislative.

Thus the Fifth Circuit held that school boards are in no respect "less a deliberative legislative body than was the town board in [*Town of Greece*]." *Id*. at *10.

Similarly, in this case, the invocations occurred during the ceremonial portion of the meeting just after the pledge of allegiance. (3 EOR. 9, p. 363, 427.) Nothing in the record suggests that the invocations were not solemn or respectful in tone, and the meeting minutes in the record indicate that most of the attendees were mature adults. Only those attendees who wished to participate in the invocation were invited to participate – no one was required to be present for the invocation. (3 EOR. 9, p. 427.) In addition, although the meetings in this case occurred on school-owned property, the invocations often referred to "Jesus" or were in "Jesus' Name", and occurred in the presence of students, like in *McCarty*, these facts do not change the nature of the board as the kind of deliberative body to which the legislative prayer exception applies. Moreover, unlike in *McCarty*, there is no evidence in the record indicating that the board members in this case requested that members of the public stand or bow their heads for the invocation, and the prayers in this case were given by adults not elementary-school students.

California law also compels the conclusion that school boards are deliberative public bodies. In California, a "legislative body" is defined as a governing body of a local agency. *Cal. Gov't Code* § 54952. The California Government Code includes school districts in its definition of "local agency". *Cal. Gov't Code* § 54951. In this case, the Board of Education is the governing board of the Chino Valley Unified School District. (3 EOR. 9, p. 400; *see also Cal. Educ. Code* § 35160.) Indeed, Board

of Education members are not employees of the school district but are publicly elected officials. *Cal. Educ. Code* § 35012.

The Board is charged with numerous legislative tasks such as: approving budgets (3 EOR. 9, p. 145, 400), overseeing district accounting (3 EOR. 9, p. 401), authorizing expenditures of school funds (3 EOR. 9, p. 148, 156, 166, 401), approving course of study and curricula for the district (3 EOR. 9, p. 155, 401), appointing all school district personnel (3 EOR. 9, p. 152, 162, 172, 177, 190, 402), establishing salaries for school district employees (3 EOR. 9, p. 402), establishing committees and appointing committee members (3 EOR. 9, p. 145, 170), and adopting district rules and regulations (3 EOR. 9, p. 146, 154, 157, 167, 176.) These matters are decided by a majority vote of the board members, all of whom are elected officials. *Cal. Educ. Code* §35012 & 35164.

The Board of Education is in every respect the same kind of deliberative legislative body as the school board in *McCarty* and the town board in *Town of Greece*. *See Am. Humanist Ass'n v. McCarty*, 2017 U.S. App. LEXIS 4922, *10, 851 F.3d 521 (5th Cir. 2017); *see also* Wicks, 31 J.L. & Pol. at 20-27 (demonstrating ways that school boards are identical to town boards). Indeed, both are headed by a small group of elected, adult officials. *See* Wicks, 31 J.L. & Pol. at 20; *Cal. Educ. Code* § 35012. Both deliberate and take action on matters of local interest. *See* Wicks, 31 J.L. & Pol. at 22-23; 3 EOR. 9, p. 414; *see also Cal. Gov't Code* §54954.3.

Both experience the occasional presence of students. *See Town of Greece,* 134 S.Ct. at 1827 (noting presentation of awards to high school athletes at town board meeting); Wicks, 31 J.L. & Pol. at 23-24.

Like the school board in *McCarty* the Board of Education does much more than simply honor student achievements or hear student-related concerns. The Board deliberates on awarding contracts to various vendors and construction contractors, hiring and firing teachers and other personnel, property purchases, and many other non-student specific issues. 3 EOR. 9, p. 143, 145, 147, 148, 152, 156, 162, 172, 176, 177, 181, 190, 194, 196, 400-01; *See Am. Humanist Ass'n v. McCarty*, 2017 U.S. App. LEXIS 4922, *10.

In addition, the Board of Education is subject to the "Brown Act". EOR 339; *Cal. Gov't Code* § 54950 *et seq*. The Brown Act requires that all deliberations of public boards be conducted openly and in public. *Id*. The Brown Act sets State policy:

The people of this State do not yield their sovereignty to the agencies which serve them. The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know. The people insist on remaining informed so that they may retain control over the instruments they have created. *Cal. Gov't Code* § 54950.

As a "legislative body" defined by the Brown Act, the Board of Education is treated under California State law just like every other deliberative public body, and is mandated to hold its meetings openly and in public so that the people can retain control over it.

The Board of Education is in every way a deliberative public body. *Cal. Gov't Code* § 54950 *et seq*.; *See Am. Humanist Ass'n v. McCarty*, 2017 U.S. App. LEXIS 4922, *10, 851 F.3d 521 (5th Cir. 2017); *Doe v. Tangipahoa Parish Sch. Bd.,* 473 F.3d 188, 192 (5th Cir. 2006) (characterizing the school board as a "deliberative body that acts in the public interest"); *Coles,* 171 F.3d at 387 (Ryan, J., dissenting) (concluding school boards are "other deliberative bodies" in which legislative prayer exception applies). Since the legislative prayer exception applies to "other deliberative public bodies", the Board of Education in this case qualifies for the legislative prayer exception. *Marsh v. Chambers*, 463 U.S. at 786, 795; *Am. Humanist Ass'n v. McCarty*, 2017 U.S. App. LEXIS 4922, *10

Indeed, the Fifth Circuit recognized that the Ninth Circuit assumed that the legislative-prayer exception applied to school-board invocations in *Bacus v. Palo Verde Unified School District*. *Id*. at *15 (citing *Bacus v. Palo Verde Unified School District* 52 F. App'x 355-356-57 (9th Cir. 2002).) This Court should finally confirm what it assumed in *Bacus*, namely that prayer during school board meetings is

properly analyzed under the legislative-prayer exception and not the school-prayer line of cases.

### b.  School Board Prayer Cases

Although the Ninth Circuit considered a school board prayer case in *Bacus v. Pablo Verde Unified Sch. Dist. Bd. of Educ.*, it did not decide whether the legislative prayer exception applied to prayer delivered at school board meetings. At the time the district court granted Plaintiff-Appellees' motion for summary judgment, only the Sixth and the Third Circuit Courts of Appeal had directly addressed that issue. Both of those decisions pre-date *Town of Greece* and *McCarty* and are inapplicable.

### i.  Bacus v. Palo Verde Unified Sch. Dist.

In *Bacus*, teachers sued the school board over its practice of conducting prayers are school board meetings. *Bacus v. Palo Verde Unified Sch. Dist. Bd. of Educ.*, 52 Fed. Appx. 355 (9th Cir. 2002). In that case, this Court assumed *arguendo* that the legislative prayer exception applied, but ultimately held that the prayers were unconstitutional because they advanced a single religion or belief. *Bacus* 52 Fed. Appx at 357 (citing *Marsh v. Chambers*, 463 U.S. 783 (1983)). But, *Bacus* was decided prior to *Town of Greece*, where the Court said the Constitution does not require invocations to be non-sectarian. *Town of Greece*, 132 S.Ct. at 1820-24. Thus, this Court's ruling in *Bacus* is called into question. *See*, *McCarty*, 2017 U.S.

App. LEXIS 4922, *15 (recognizing that *Town of Greece* came to a different conclusion than *Bacus* regarding sectarian nature of prayers).

### ii.   Coles v. Cleveland Board of Education

In the Sixth Circuit Court of Appeals case, *Coles v. Cleveland Board of Education,* the school board president chose local clergy to give prayers at the opening of the school board meetings or the board president gave the prayers himself. *Coles v. Cleveland Bd. of Educ.,* 171 F.3d 369, 372-74 (6th Cir. 1999). With few exceptions, the prayers were Christian in nature. *Id.* at 373-74. In addressing the constitutionality of prayers at school board meetings, the Court noted that reasonable minds can differ on this very issue:

This case is 'squarely between the proverbial rock and a hard place'. . . . Are the prayers in question more like 'school prayers' prohibited by *Lee* or closer to 'legislative prayers' permitted by *Marsh*? Reasonable minds can differ on this issue, as indeed they have in this very case.

*Id.* at 371.

According to the Sixth Circuit, prayers at school board meetings do not fit neatly within the prohibited category of "school-sponsored prayer" because the prayers are not said in front of the student body as a whole. *Id.* at 376. Nevertheless, the Court found that school board meetings did not fall under the legislative or deliberative body exception established by *Marsh*. *Id.* at 383. The Sixth Circuit

found that a school board is not like a legislative body; instead, it is an integral part of the public school system – meetings occur on school property, and students often attend the meetings. *Id.* at 377, 383. Therefore, the Court found that prayer at a school board meeting violated the Establishment Clause. *Id.*

### iii. Doe v. Indian River Sch. Dist.

In the 2011 case of *Doe v. Indian River School District*, the Third Circuit Court of Appeals concluded that the legislative prayer exception from *Marsh* was not applicable to school board meetings and instead applied the analytical framework articulated in *Lee v. Weisman. Doe v. Indian River School District*, 653 F.3d 256 (3d Cir. 2011) *cert. denied*, 132 S. Ct. 1097 (2012).

In *Indian River*, the school board asked each board member to offer a prayer at the beginning of each meeting, on a rotating basis. *Id.* at 261-63. In its policy, the board explicitly stated that the prayers "shall not be used or exploited to proselytize, advance, or convert anyone, or to derogate or otherwise disparage any particular faith or belief." *Id.* at 261. The policy further stated that the board member leading the prayer could use "freedom of conscience in choosing what to say." *Id.* at 261-62. Additionally, a disclaimer was read at the start of every meeting. *Id.* at 262. The "prayers" offered by the various board members included moments of silence, a recitation of a historic speech (by persons such as Martin Luther King, Jr. or George Washington), and prayers in the traditional sense. *Id.* at 265-66.

The district court initially upheld the prayer policy under *Marsh*, finding a school board is a deliberative public body as it sets educational policies for schools, hires and fires employees, and approves curriculum and budgets. *Id.* at 259, 267-69. The Third Circuit, however, reversed after concluding that school board prayer is properly analyzed under the *Lee v. Weisman* framework rather than the *Marsh* legislative exception. *Id.* at 278-79.

The Third Circuit found that *Marsh* did not adequately capture "the need to protect students from government coercion in the form of endorsed or sponsored religion at the heart of the school prayer cases." *Id.* at 275. While the trial court had initially determined that board meetings were "incidental to a student's public school experience," akin to students viewing legislative sessions with opening prayers, the Court found student board meeting attendance more analogous to attendance at graduation ceremonies or a high school football game. *Id.* at 267-68, 280.

The Court focused on the fact that school board meetings take place on school property, the board retains control of the meeting and agenda, and the board's purpose is to promote and support the public school system. *Id.* at 278-79. Finding it irrelevant to determine whether a school board was a deliberative or legislative body, the Court held that the risk of coercion is heightened in the public school context, including school board meetings. *Id.* at 275. As a result, the Court found

*Marsh* did not apply, and prayer at school board meetings was unconstitutional. *Id.* at 275, 290.

### iv. *Coles* and *Indian River* are not applicable

The *Indian River* and *Coles* decisions pre-date *Town of Greece* and are now called into question by the Supreme Court's decision. *See Am. Humanist Ass'n v. McCarty*, 2017 U.S. App. LEXIS 4922, *10 (recognizing that *Coles* and *Indian River* predate *Town of Greece* and finding that school board prayer is properly analyzed under the legislative prayer exception). *Town of Greece* referenced the presence of students at town board meetings and still found the practice of legislative, opening prayer constitutional. *See Town of Greece,* 134 S.Ct. at 1827. The Supreme Court made clear that the principles from *Marsh* do not require a history of prayer dating back to the enactment of the Constitution. *Id.* at 1819. Also, the ability of citizens to participate and address the board does not remove the case from the *Marsh* exception. *See id.* at 1825; *see also* Wicks, 31 J.L. & Pol. at 32-33.

Both *Indian River* and *Coles* are similar to this case in that in those cases and this case the school boards had student representatives. *Coles* 171 F.3d at 372; *Indian River* 653 F.3d at 277-78; 3 EOR. 9, p. 405. But *Coles* and *Indian River* are distinguishable because in those cases attendance by the student representative was mandatory. *Coles* 171 F.3d at 372 (noting that student representatives were at each meeting; *Indian River* 653 F.3d at 277 (noting that attendance of student

representatives borders on compulsory). In this case, attendance by the student representatives is optional and not mandatory (3 EOR. 9, p. 284, 320, 346, 355, 375, 405) and student representatives are free to come and go as they please (3 EOR. 9, p. 178, 307, 405.)

Additionally, the school board in *Indian River* controlled all aspects of the prayer. *See Indian River*, 653 F.3d at 261-63. In this case, although school board members occasionally led invocations, nothing in the record suggests the Board of Education composed, screened, or otherwise vetted the content of invocations prior to being presented during a meeting.

Moreover, the *Indian River* court based its decision, in part, on its finding that educating students was the school board's main purpose and that board meetings were meaningful to students. *Indian River Sch. Bd.,* 653 F.3d at 277-79. While technically true that a school board exists to administer the public school system and promote education of its students, that alone does not remove a school board from the *Marsh* and *Town of Greece* deliberative body exception. School boards, while integral to the public school system, are not public schools or classrooms themselves. *See* Paul Imperatore, *Solemn School Boards: Limiting* Marsh v. Chambers *to Make School Board Prayer Unconstitutional,* 101 GEO. L.J. 839, 847-48 (2013).

A school board meeting is not a school-sponsored function, like a graduation, awards assemblies, or sporting events; instead, it is a meeting of a legislative body,

elected by adult citizens. *See id*; *see also Cal. Educ. Code* § 35012. The ability to transform a school board prayer into an impermissible entanglement issue by the mere presence of students is akin to "transforming a school board meeting into a student council meeting." *Id.* Attending a school board meeting of elected adult officials does not implicate the same concerns of coerciveness as does prayer at student-centered events. *See* Wicks, 31 J.L. & Pol. at 27; *see also Indian River Sch. Dist.,* 685 F.Supp.2d at 539 (students attending a school board meeting is "at best incidental to a student's public school experience").

### B.  School Prayer Line of Cases

The line of school-prayer cases do not create a per se rule of no prayers allowed at school related events. *See, e.g.*, *Adler v. Duval County Sch. Bd.*, 250 F.3d 1330, 1342 (11th Cir.), *cert. denied*, 534 U.S. 1065 (2001) (upholding, en banc and post-*Santa Fe*, a school's policy that permitted seniors to elect to have unrestricted student-led messages at the beginning and end of graduation ceremonies); *Chandler v. Siegelman*, 230 F.3d 1313 (11th Cir. 2000) (finding student-led prayers at graduation constitutional and distinguishing Santa Fe based on its impermissible majoritarian election process for prayers), *cert. denied*, 533 U.S. 916 (2001); *Ingebretsen on Behalf of Ingebretsen v. Jackson Pub. Sch. Dist.*, 88 F.3d 274, 280 (5th Cir.), *cert. denied*, 519 U.S. 965 (1996) (allowing a student "to choose to pray at high school graduation to solemnize that once-in-a-lifetime event").

The line of school-prayer cases, like those cited by the district court, dealt with issues unique to school specific settings:

- Morning prayer recitations in the classroom (*Engel v. Vitale*, 370 U.S. 421 (1962);

- Reading of Bible verses in the classroom at the start of each school day (*School Dist. of Abington Twp. v. Schempp,* 374 U.S. 203 (1963);

- Praying at the start of the school day (*Wallace v. Jaffree,* 474 U.S. 38 (1985);

- A coach praying with athletes at games and practice (*Doe v. Duncanville Indep. Sch. Dist.*, 994 F.3d 160 (5th Cir. 1993);

- Having a rabbi deliver prayer at a high school graduation (*Lee v. Weisman,* 505 U.S. 577 (1992); and

- Electing students to deliver prayer at football games (*Santa Fe Indep. Sch. Dist. v. Doe,* 530 U.S. 290 (2000).

These cases involved classroom, school, or extra-curricular school-sponsored settings. They did not involve meetings of an elected legislative body. Although *Lee* noted that there are obvious differences between a school and legislature, in distinguishing *Marsh,* the *Lee* Court was discussing graduation ceremonies, not a meeting of a publicly elected school board. *Lee*, 505 U.S. at 597. Indeed, the Court

found a graduation ceremony analogous to a "classroom setting" environment, requiring heightened concerns over prayer practices in that setting. *Id.*

The Board of Education meetings in this case are not student-centered activities or otherwise analogous to a classroom setting, as in the school-prayer line of cases. A board meeting, in which board members deliberate and consider such varied topics as budgets, copyrights, license agreements, school building construction projects, the hiring and firing of personnel, and the acceptance or rejection of potentially litigated claims is not in any way similar to a classroom setting or other school-sponsored activities like graduations, student assemblies, or extra-curricular and sporting events. (3 EOR. 9, p. 143, 145, 147, 148, 152, 156, 162, 172, 176, 177, 181, 190, 194, 196, 400-01.) Student attendance at a board meeting is entirely voluntary, and those in attendance typically come and go. (3 EOR. 9, p. 178, 284, 307, 320, 346, 355, 375, 375, 405.) A school board meeting is not a school-sponsored function, but rather, a meeting of an elected, legislative body. *See Cal Gov't Code* § 54952; *see also* Paul Imperatore, *Solemn School Boards: Limiting* Marsh v. Chambers *to Make School Board Prayer Unconstitutional*, 101 GEO. L.J. 839, 847-48 (2013).

The mere presence of students at meetings does not transform the deliberative legislative body into a school-sponsored setting. *See Town of Greece,* 134 S.Ct. at 1827 (presence of high schoolers at town board meeting did not affect court's finding

town board's invocation prayers were constitutional); *Galloway v. Town of Greece*, 681 F.3d 20, 22-23 (2d Cir. 2012) rev'd 134 S.Ct. 1811 (2014)(noting children of residents, student groups, Boy Scouts, and other students at times attend School Board meetings), *see also* Imperatore, 101 GEO. L.J. at 849. Students may choose to attend or not attend a school board meeting, and the lack of student presence at the Board of Education meetings would not affect the ability of the Board to carry out its business.

Conversely, student participation is necessary for graduation, football games, and the school day. Unlike a board meeting, classroom instruction, graduations, award ceremonies, and sporting events are school-sponsored, student-centered events, which cannot proceed without student participation. There is no indicia of coerciveness or involuntariness at a board meeting, in stark contrast to courts' findings in other school settings. A school board cannot require the attendance of students at the board meetings; it cannot require a particular form of dress to attend a board meeting – a public, open meeting – unlike the requirements for students in the classroom setting or at school events. Persons in attendance at a board meeting are free to come and go, as they are at other deliberative, legislative body meetings.

The school-prayer cases do not apply to prayers at a board meeting. Instead, the legislative prayer exception carved out in *Marsh* and *Town of Greece* applies, as set out above.

## II.   The Board's practice of allowing invocational speakers does not violate the Establishment Clause.

After concluding that school boards do not qualify for the legislative prayer exception, the district court applied the *Lemon* test and concluded that the Board of Education's practice of permitting prayer at its meetings violated the Establishment Clause. The court erred. First, it is not clear whether the *Lemon* test entirely survives *Town of Greece*. Second, even if the *Lemon* test does survive the *Town of Greece*, the Board of Education's invocation policy satisfies the *Lemon* test.

### A.   The Lemon test

The Ninth Circuit has called the *Lemon* test "the benchmark to gauge whether a particular government activity violates the Establishment Clause." *Access Fund v. USDA*, 499 F.3d 1036, 1042 (9th Cir. 2007) (referring to the test articulated in *Lemon v. Kurtzman,* 403 U.S. 602 (1971)). But the *Lemon* test is not without its criticism. Over the years, the Supreme Court has questioned the *Lemon* test:

Like some ghoul in a late-night horror movie that repeatedly sits up in its grave and shuffles abroad, after being repeatedly killed and buried, *Lemon* stalks our Establishment Clause jurisprudence again, frightening the little children and school attorneys     . . . . . Over the years, however, no fewer than five of the currently sitting Justices have, in their own opinions, personally driven pencils through the creature's heart . . .  and a sixth has joined an opinion doing so.

*Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*, 508 U.S. 384, 398 (1993) (Scalia, J., concurring in the judgment) (collecting cases).

Indeed, Judge Fernandez in his concurring opinion in *Card v. City of Everett* stated: "[t]he still stalking *Lemon* test and the other tests and factors, which have floated to the top of this chaotic ocean from time to time in order to answer specific questions, are so indefinite and unhelpful that Establishment Clause jurisprudence has not become more fathomable." *Card v. City of Everett*, 520 F.3d 1009, 1024 (9th Cir. 2008). At issue in *Card v. City of Everett*, was whether a Ten Commandments display on public land violated the Establishment Clause. *Id.* at 1010-11. The Ninth Circuit specifically held "we do not use the *Lemon* test to determine the constitutionality of some longstanding plainly religious displays that convey a historical or secular message in a nonreligious context." *Id.* at 1016. In so holding, the Ninth Circuit recognized an exception to the *Lemon* test. *Id.* at 1021.

Subsequently the Supreme Court appeared to abandon the *Lemon* test by recognizing that "the Establishment Clause must be interpreted 'by reference to historical practices and understandings.'" *Town of Greece*, 134 S. Ct. at 1819. The Supreme Court considers legislative prayer to be a "'tolerable acknowledgement of beliefs widely held' rather than a first, treacherous step towards establishment of a state church." *Town of Greece,* 134 S.Ct. at 1818 (quoting *Marsh,* 453 U.S. at 792). The Supreme Court rejected any "test that would sweep away what has so long been

settled, [which] would create new controversy and begin anew the very divisions along religious lines that the Establishment Clause seeks to prevent." *Town of Greece*, 134 S.Ct. at 1820.

The late Justice Scalia and Justice Thomas in their dissent from a recent denial of certiorari recognized that "*Town of Greece* abandoned the antiquated 'endorsement test.'" *Elmbrook Sch. Dist. v. Doe*, 134 S. Ct. 2283, 2284 (2014)(Mem.)(Scalia, J. and Thomas, J. dissenting from denial of certiorari). Other courts have also recognized that the traditional endorsement test has been abandoned. *Am. Humanist Ass'n v. S. Carolina Dept. of Educ.,* 6:13-CV-02471-BHH, 2015 WL 1268036, at *6 (D.S.C. Feb. 18, 2015), *report and recommendation adopted*, 6:13-2471-BHH, 2015 WL 1268157 (D.S.C. Mar. 19, 2015)("Here, however, the Court declines to apply the endorsement test because the Supreme Court has indicated it has been abandoned" citing *Town of Greece*).

The Ninth Circuit has continued to use the *Lemon* Test, even after *Town of Greece*, but has not specifically addressed whether the *Lemon* test survives *Town of Greece* or whether there is an exception to the *Lemon* test for historically accepted practices. Legislative prayer is part of our heritage and tradition.  *Town of Greece*, 134 S.Ct. at 1825. Since the kind of prayer allowed by the Board of Education's invocation policy is part of our country's heritage and tradition, it cannot violate the Establishment Clause.

But even if the *Lemon* test survives *Town of Greece* and is appropriate in this context, the Board of Education's policy of allowing members of the clergy and other religious leaders to open board meetings with an invocation does not violate the Establishment Clause.

## B.   The Policy satisfies the traditional *Lemon* test factors

The traditional *Lemon* test outlines the kinds of statutes which pass constitutional scrutiny under the Establishment Clause. Indeed, as referenced above, the Ninth Circuit has called the *Lemon* test "the benchmark to gauge whether a particular government activity violates the Establishment Clause." *Access Fund* 499 F.3d at 1042. Under the *Lemon* test, government action is permissible for purposes of the Establishment Clause if it (i) has a secular purpose; (ii) its primary effect is to neither advance nor inhibit religion; and (iii) does not foster excessive entanglement with religion. *Lemon*, 403 U.S. at 612-13. The Ninth Circuit has recognized that the last two prongs ask "whether the challenged governmental practice has the effect of endorsing religion." *Trunk v. City of San Diego*, 629 F.3d 1099, 1109 (9th Cir. 2011).

## 1.   Secular purpose.

The first prong of the *Lemon* test asks whether "the government intended to convey a message of endorsement or disapproval of religion." *Edwards v. Aguillard*, 482 U.S. 578, 585 (1987). Importantly, the government's purpose need not be entirely secular and may be motivated, in part, by a religious purpose. *Wallace v.*

*Jaffree*, 472 U.S. 38, 56 (1985). Instead, the Establishment Clause requires a government policy to be invalidated if "it is **entirely** motivated by a purpose to advance religion." *Id.* (emphasis added).

In this case, the prayer policy at issue was passed by a unanimous 5-0 vote of the school board members. (3 EOR. 9, p. 165.) The Policy's stated purpose is: "to solemnize proceedings of the Board of Education" (3 EOR. 9, p. 423) and to "acknowledge and express the Board of Education's respect for the diversity of religious denominations and faiths represented and practiced among the citizens who reside in the Chino Valley Unified School District." (3 EOR. 9, p. 427). These purposes are entirely secular and neutral towards religion. The stated purpose of the Policy is entitled to "some deference." *Santa Fe*, 530 U.S. at 308. The district court implicitly agreed that the Policy had a secular purpose on its face, but ultimately found that the Policy did not have a secular purpose as applied for two reasons. First, because two of the five board members made what it characterized as "overtly religious, proselytizing statements." (1 EOR. 2, p 27.) Second, because the meeting could be solemnized without religious invocations. (1 EOR. 2, p. 27.)

### a.     The "overtly religious, and proselytizing statements"

Although courts are required to give deference to the secular purpose of a policy, the secular purpose must be sincere and not a "sham." *Edwards v. Aguillard,* 482 U.S. 578, 587 (1987). The district court questioned the sincerity of the asserted

secular purpose based on statements made by two of the board members, Andrew Cruz and James Na. (1 EOR. 2, p. 27.) The Policy at issue was voted on by all five of the board members. (3 EOR. 9, p. 165.) The purpose identified in the Policy embodies the sentiments of the entire Board.

Of the 109 undisputed facts offered by the Plaintiff-Appellees (2 EOR. 7, p. 108-25) only Andrew Cruz and James Na are identified as making statements which could possibly be characterized as overtly religious or proselytizing statements.[3] The corollary is that a **majority** of the Board did not make overtly religious or proselytizing statements. It is irrational to conclude that a policy with an otherwise secular purpose is invalid because two of the five members voting for the policy may have had different motives.

The Supreme Court recognizes that a policy may be partly motivated by religion. In contrast however, it invalidates those which are "**entirely** motivated by a purpose to advance religion." *Wallace*, 472 U.S. at 56 (emphasis added). Nothing in the record indicates that the Policy is "entirely motivated to advance religion." In fact, the district court did not find that the Policy was entirely motivated to advance

---

[3] Whether these statements are proselytizing or violate the Plaintiff-Appellee's First Amendment rights, is not at issue in this appeal. As discussed below in Section IV, the Board has subsequently adopted Board Bylaw 9010.5, which prohibits board members from engaging in proselytization and mandates that the board member be "neutral towards religion and/or non-religion." (2 EOR. 4, p. 33.) Thus, whether the comments made by two of the Board members are overtly religious or constitute proselytization is moot.

religion. Instead, the district court found that the purpose for the policy was not sincere based on the statements made by two of the five voting members of the board.

In *Edwards v. Aguillard*, the Court considered a Louisiana state law requiring creationism to be taught anytime when the theory of evolution is taught. *Edwards v. Aguillard*, 482 U.S. 578, 589 (1987). The State's alleged secular purpose was to promote a comprehensive science education. *Id.* at 587. But the Court found that purpose to be insincere because the sponsor of the legislation made statements expressing a desire that neither creationism nor evolution be taught. *Id.*

By contrast, in this case, neither Andrew Cruz nor James Na authored or otherwise sponsored the Policy and none of the statements made by Mr. Cruz or Mr. Na related to the prayer policy. Instead, the record indicates that the statements made by Mr. Na and Mr. Cruz had nothing to do with the prayer policy. While the prayers occurred at the beginning of the board meetings, the statements referenced by the district court, and the Plaintiffs-Appellees' separate statement, all occurred at the end of the board meetings. (3 EOR. 9, p. 149, 157, 167, 168, 178-79, 187, 196, 204, 205, 212, 213, 223, 233-34, 244, 261-62, 271, 280, 288, 297, 317.)

The statement of Mr. Na referenced by the court urging "everyone who does not know Jesus Christ to go and find him" occurred several months after the Policy was adopted and was in response to a teacher who recently lost both a child and a

parent. (3 EOR. 9, p. 179.) Importantly, this teacher who was encouraged in her time of loss is not a Plaintiff to this litigation. The statement of Mr. Cruz referenced by the court stating that ". . . very few districts of that powerfulness of having a board such as ourselves having a goal. And that one goal is under God, Jesus Christ," is incoherent and creates a question of fact as to what he meant. Moreover, it occurred several months after the Policy was adopted and was likely in reference to the district's hope and vision statement which was being discussed at that meeting. (3 EOR. 9, p. 181-87.)

None of the statements referenced by the district court lead to the conclusion that the prayer policy was adopted for anything other than secular purposes. In fact, the statements all appear to be personal opinions and/or expressions of religious faith by Mr. Cruz and Mr. Na. The only conclusion to be learned from these statements is that Mr. Na and Mr. Cruz are devoted Christians. Since the statements referenced by the district court have nothing to do with the prayer policy, and are mere expressions of Mr. Na and Mr. Cruz's personal faith, the Court must have concluded that the Policy was not secular because two of the five members who voted for it happened to be Christian. Not one single case holds that only non-religious people can adopt secularly purposed policies.

Therefore, the district court erred when it found that the Policy was not advancing a secular purpose because no evidence in the record supports the argument that the Policy was entirely motivated by a purpose of advancing religion.

### b.  <u>Alternative ways to solemnize a board meeting.</u>

The philosopher Immanuel Kant penned the maxim "ought implies can."[4] The district court has apparently attempted another similar, although dubious, maxim of "can implies ought." The district court reasoned that because the Board could have solemnized its meetings without religious prayer, that it was legally obligated to only solemnize its meetings without religious prayer. (1 EOR. 2, p. 27.)

The district court relied on *Coles* to find that the Policy was not secular because there were alternative ways to solemnize the board meetings. (1 EOR. 2, p. 27.) But the Board's practice of solemnizing its meetings with prayer is not new. (3 EOR. 9, p. 423.) The record indicates that the Board "has long followed a practice of inviting members of all local clergy of all faiths to provide invocations at Board of Education meetings." (3 EOR. 9, p. 423.)

The district court's reliance on *Coles* is misguided. In *Coles*, the Eleventh Circuit found that a school board's policy did not have a secular purpose because the

---

[4] This maxim is an ethical maxim which means that if an agent is morally obligated to perform or refrain from any act, then it must necessarily be an act in which the agent has the option of choosing his or her course of action. See, Kant, *Religion Within the Boundaries of Mere Reason*, 6:50, p. 94

prayers allowed by the policy "went beyond what was necessary to solemnize or bring a more businesslike decorum to such meetings." *Coles*, 171 F.3d at 384. Important for the Eleventh Circuit was that the prayers "frequently called for divine assistance or affirmation . . . [used] references to the Bible. . . . [and] mentioned Jesus by name." *Id*.

But *Coles* was decided prior to *Town of Greece*, which clarified that a prayer-policy need not exclude religious prayers to pass constitutional scrutiny. *Town of Greece*, 132. S.Ct. 1824. Thus, it is irrelevant whether the Board could have solemnized its meetings in an alternative manner. Indeed, the Court held that expressly religious prayers are permissible "[s]o long as the town maintains a policy of non-discrimination." *Id*. In this case, the Policy does not discriminate between religions and Christians, Muslims, and Hindus have all offered prayers at the board meetings. (3 EOR. 9, p. 208, 311, 374, 423-28.)

But even if the portion of *Coles* cited by the district court survives *Town of Greece*, the court erred. The district court only considered the purpose of solemnizing the board meetings. It failed to evaluate the other purpose of the Policy, which was to acknowledge and respect the diversity of religious beliefs within the boundaries of the District. (3 EOR. 9, p. 427.) This purpose is secular. For example, the U.S. Constitution has a similar purpose in permitting the free exercise of religion. It would be absurd to conclude that the U.S. Constitution is unconstitutional because

it requires the government to tolerate diverse religious viewpoints. Thus, the Policy must have had a secular purpose.

### 2. Endorsement of religion

The final two prongs of the *Lemon* asks "whether the challenged governmental practice has the effect of endorsing religion." *Trunk v. City of San Diego*, 629 F.3d 1099, 1109 (9th Cir. 2011). By "endorsement" this Court has held that it is concerned with "those acts that send the stigmatic message to nonadherents "'that they are outsiders, not full members of the political community, and an accompanying message to adherents that they are insiders, favored members.'" *Trunk*, 629 F.3d at 1109. The Court conducts its "inquiry from the perspective of an 'informed and reasonable' observer who is 'familiar with the history of the government practice at issue.'" *Id.* at 1110.

The Supreme Court in *Town of Greece*, commented on the history and tradition of prayer in front of deliberative, legislative bodies, and found that "[i]t is presumed that the reasonable observer is acquainted with this tradition and understands that its purposes are to lend gravity to public proceedings and to acknowledge the place religion holds in the lives of many private citizens. . . ." *Town of Greece*, 132 S.Ct. at 1827.

In this case, the district court conflated the prayers during the ceremonial beginning of the board meeting and the religious comments by Messrs Na and Cruz

during the response to public comments portion of the board meetings. (3 EOR. 9, p. 149, 157, 167, 168, 178, 187, 196, 204, 205, 212, 213, 223, 233-34, 244, 261-62, 271, 280, 288, 297, 317, 327.) The two are separate, and the latter is mooted by Board Bylaw 9010.5 (discussed below in part IV). The district court concluded that the Policy endorsed religion because the comments made by Messrs Na and Cruz would lead a reasonable observer to conclude that the Board was endorsing the statements by Messrs Na and Cruz. (1 EOR. 2, p. 27.) The district court specifically referred to Mr. Na's comment on January 16, 2014 that people should go and find Jesus. (1 EOR. 2, p. 27; 3 EOR. 9, p. 104.) Several facts show that the district court is wrong.

First, the context of the statements could not lead a reasonable observer, familiar with the history of the board, to conclude that the Board at large endorsed the statements of Messrs Na & Cruz. The Board meetings started around 4:30p.m., with the closed session.[5] (3 EOR. 9, p. 172, 362.) The Board reconvened for the public, open session at 7:00p.m. (3 EOR. 9, p. 172, 363.) The invocation is given after the pledge of allegiance at 7:00p.m. (3 EOR. 9, p. 363.) Comments by board members occur several hours later. (3 EOR. 9, p. 179, 371.) The specific comment by Mr. Na, referenced by the district court, occurred just prior to adjournment at

---

[5] Each of the Minutes from the Board Meetings in the record show this fact, for example EOR 287 shows that the meeting on May 7, 2015 started at 4:30 with closed session.

9:00p.m. (3 EOR. 9, p. 179.) Moreover, the context of the statement shows that it could not have been interpreted as an endorsement of the religious expressions contained in the prayers. Mr. Na was consoling a grieving mother who lost both a child and parent. (3 EOR. 9, p. 179.) In context, a reasonable observer would not associate that moment of condolence by an individual board member with the entire Board's seal of approval.

Second, all of the alleged overtly religious or proselytizing comments were made by the same two people, Messrs Na & Cruz. A review of the minutes of the board meetings in the record shows that their comments were almost always in response to topics addressed during the open, public meeting. (3 EOR. 9, p. 149, 157, 167, 168, 178-79, 187, 196, 204, 205, 212, 213, 223, 233-34, 244, 261-62, 271, 280, 288, 297, 317.) The fact that not a single additional board member joined Messrs Na & Cruz in making these kinds of religious statements would lead a reasonable observer, familiar with the board's history, to conclude that the statements were merely the opinions of the two elected officials themselves, not the opinion of the district or the Board itself.

Third, the Board excluded the invocation from the meeting agendas. (3 EOR. 9, p. 425.) And people were free to come and go as they pleased. (3 EOR. 9, p. 425, 427.) The process followed by the Board would be to introduce the speakers and invite only those who wishes to participate. (3 EOR. 9, p. 427.) Under these

circumstances it is difficult to see how a reasonable observer familiar with the Board's practice and its invocation policy could conclude, as the district court did, that the state had placed its imprimatur on the prayers offered.

Finally, although the prayers were largely Christian in nature, the Board invited representatives of every religion practiced within its boundaries, chosen on a first come, first served random basis. (3 EOR. 9, p. 425-27, 452, 460.) In addition, members from Christian as well as Muslim and Hindu faiths all recited invocations. (3 EOR. 9, p. 208, 311. 374, 423-28, 460.) A reasonable observer, with knowledge of the diverse prayers offered and the districts purpose of acknowledging and respective religious diversity, could not conclude that the District or its Board were endorsing Christianity. (1 EOR. 2, p. 28.)

Just the opposite, the facts lead a reasonable observer to conclude that the District respects religious diversity and has not endorsed Christianity or any other religion. Since the prayer policy was adopted for a secular purpose and does not endorse religion, the district court erred when it concluded that it violated the Establishment Clause.

**C.** **The Policy does not coerce anyone to participate in religion or its exercise.**

In *Lee v. Weisman*, the Court articulated what is known as the coercion test. *Lee v. Weisman*, 505 U.S. 577, 587 (1992). That test states that "government may

not coerce anyone to support or participate in religion or its exercise, or otherwise act in a way which 'establishes a [state] religion or religious faith, or tends to do so.'" *Lee*, 505 U.S. at 587. In *Lee*, the Court held that a prayer during a school graduation violated the Establishment Clause because it required the Weismans to participate in a religious exercise. *Id*. at 594. The government argued that the prayer was not coerced because attendance at a graduation ceremony is voluntary. *Id*. at 595. The Court rejected this argument because "to say a teenage student has a real choice not to attend her high school graduation is formalistic in the extreme." *Id*. at 595.

The Court also distinguished legislative-prayer from prayers at graduations. *Id*. at 597. The Court noted that graduations are different from the opening session of a state legislature because:

- the participants are free to enter and leave with little commitment for any reason;

- openings sessions of state legislatures do not compare with a graduation, which is the most important event in a student's life;

- the influence and force of a formal prayer in a high school graduation is far greater than a formal prayer in a state legislature.

- Teachers and principals retain a "high degree of control over the precise contents of the program, the speeches, the timing, the movements, the dress, and the decorum of the students."

- [*Id.* at 597.]

As discussed above, school board meetings are much more like state legislatures. Attendees are free to come and go as they please, board meetings are not the most important event in a student's life, and the school does not retain control over the contents of the speeches, the dress, or decorum of the attendees. Thus, prayers at school board meetings are not coercive and do not force participants to participate in religious exercise.

## III. The District Court's Judgment is an Unreasonable Content Based Restriction in a Limited Public Forum.

When a state, or in this case, a local agency opens a forum for direct citizen involvement it has created a forum. *See City of Madison, Joint School Dist. No. 8 v. Wisconsin Employment Relations Commission*, 429 U.S. 167, 175 (1976). California's Brown Act provides that "all meetings of the legislative body of a local agency shall be open and public, and all person shall be permitted to attend any meeting of the legislative body of a local agency." *Cal. Gov't Code* § 54954.3. Under the Brown Act and the California Education Code, the California Legislature has designated school board meetings as limited public fora.

*See Leventhal v. Vista Unified School Dist.*, 973 F.Supp. 951, 957 (S.D. Cal. 1997) (citing Cal Gov't Code § 54954.3; Cal. Educ. Code § 35145.5); *Baca v. Moreno Valley Unified Sch. Dist.*, 936 F.Supp. 719, 729 (C.D.Cal.1996).

"A limited public forum is a sub-category of a designated public forum that 'refers to a type of nonpublic forum that the government has intentionally opened to certain groups or to certain topics.'" *Hopper v. City of Pasco*, 241 F.3d 1067, 1074 (9th Cir. 2001) (quoting *DiLoreto v. Downey Unified Sch. Dist. Bd. of Educ.*, 196 F.3d 958, 965 n.4 (9th Cir. 1999). In a limited public forum, the Ninth Circuit applies the "reasonableness test." *Id.* at 1075. The reasonableness test allows certain kinds of restrictions that are "viewpoint neutral and reasonable in light of the purpose served by the forum." *DiLoreto*, 196 F.3d at 965. However, the government may not limit the speaker if the restriction is based on the speaker's viewpoint. *Id*.

If the government excludes a speaker who falls within the class to which a public forum is made generally available, its action is subject to strict scrutiny. *Arkansas Educ. Television Comm'n v. Forbes*, 523 U.S. 666, 677 (1998). In addition to time, place, and manner regulations, the state may reserve the forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983). In 2001, the Supreme Court ruled that speech discussing

otherwise permissible subjects cannot be excluded from a limited public forum on the ground that the subject is discussed from a religious viewpoint. *See Good News Club v. Milford Central School*, 533 U.S. 98, 112 (2001).

Similarly, in *Baca v. Moreno Valley* the central district ruled on a school district's removal of a community member voicing negative opinions of a member of school district staff. *Baca*, 936 F.Supp. at 724-25. Following comments of Victoria Baca during the opportunity for public comment, she was expelled from an open meeting of the Moreno Valley Unified School District after criticizing district employees by name and position. *Id*. at 726. The central district held that neither the United States Constitution nor the California State Constitution allowed the government to censor statements merely because they are false and defamatory. *Id*. at 727.

Even if the prayer policy violates the Establishment Clause, the judgment entered by the district court is overly broad because it is a content based restriction in a limited public forum. The judgment not only restricts the board members from praying or making religious comments, it also restricts members of the public from praying or endorsing prayer during public comment. (1 EOR 3, p. 31.) The injunction granted by the judgment enjoins the school board members from "conducting, **permitting**, or otherwise endorsing school-sponsored prayer in Board meetings." (1 EOR. 3, p. 31) (emphasis added). The word "permitting" in the

judgment requires the school board member to stop public comments if, in the board member's opinion, the comment is a prayer.

Members of the public are given the opportunity at each school board meeting to address the board "on any item of interest to the public . . . that is within the subject matter jurisdiction of the governing board." *Cal Educ. Code* § 35145.5. Since the judgment would prevent members of the public from reciting prayers or publicly praying for the Board during board meetings, the judgment is subject to strict scrutiny. *See*, *Arkansas Educ. Television Comm'n*, 523 U.S. at 677.

Under strict scrutiny the district court's judgment will only be upheld if it serves a compelling state interest and is narrowly tailored to achieve that interest. *See*, *Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 800 (1985). There can be no compelling interest in restricting public comments in a limited public forum based on the contents of the speech. Even if it can be shown that there is a compelling need to restrain members of the public from reciting prayers during school board meetings, the judgment is not narrowly tailored to achieve that end.

## IV.   The Portion of the Judgment Relating to Bible Readings and Proselytization is Moot.

The declaratory relief portion of the judgment declares that the Board's custom of Bible readings, and proselytization at Board meetings is an

unconstitutional endorsement of religion. (EOR 31.) On November 3, 2016, after filing this appeal, the Board adopted Board Bylaw 9010.5, which states:

1. During the public portion of the Board meeting, Board members may discuss religion or religious perspectives to the extent that they are germane to agenda items or public comments.

2. When acting in their official capacities and when speaking on behalf of the District, Board members shall not proselytize, and shall be neutral towards religion and/or non-religion. (2 EOR. 4, p. 33.)

This subsequently adopted Bylaw moots the portion of the declaratory judgment relating to Bible readings, and proselytization.

"Mootness is like standing, in that if it turns out that resolution of the issue presented cannot really affect the plaintiff's rights, there is, generally speaking, no case or controversy for the courts to adjudicate; no real relief can be awarded." *Get Outdoors II, LLC v. City of Chula Vista*, 407 F. Supp. 2d 1172, 1176 (S.D. Cal. 2005), aff'd, 254 F. App'x 571 (9th Cir. 2007) (citing *Smith v. University of Washington, Law School*, 233 F.3d 1188, 1193 (9th Cir.2000)). An action is moot where the issues presented are no longer "live" or when the parties lack a cognizable interest in the outcome. *Id*. (citing *Jacobus v. Alaska*, 338 F.3d 1095, 1102 (9th Cir.2003)).

For instance, in many cases a case becomes moot when a challenged law is repealed or expires. *See*, *Burke v. Barnes*, 479 U.S. 361, 363 (1987) (bill expired during pendency of appeal, rendering moot the question of whether the president's pocket veto prevented it from becoming law); *Princeton University v. Schmid*, 455 U.S. 100, 103, 102 S.Ct. 867, 70 L.Ed.2d 855 (1982) (case mooted by substantial amendment of challenged regulations); *Diffenderfer v. Central Baptist Church*, 404 U.S. 412, 414 (1972) (challenged law was repealed while case was on appeal, rendering the case moot).

"In determining whether a case has become moot on appeal, the appellate court 'review[s] the judgment below in light of the . . . statute as it now stands, not as it . . . did' before the district court." *Log Cabin Republicans v. United States*, 658 F.3d 1162, 1166 (9th Cir. 2011) (citing *Halls v. Beals*, 396 U.S. 45, 48 (1969).) Even after a district court's judgment, an appellant may moot an issue if it adopts subsequent policies or legislation that addresses the lower court's concerns. (*See, e.g.*, *Wyoming v. U.S. Dep't of Agr.*, 414 F.3d 1207, 1211 (10th Cir. 2005) (challenge to Forest Service rules mooted by adoption of new and different rules by Department of Agriculture after district court's judgment against Department of Agriculture).

The declaratory judgment regarding Bible reading and proselytization should be reversed because the federal courts lack jurisdiction to hear those issues since the issue is moot. *See, e.g., Foster v. Carson,* 347 F.3d 742, 745 (9th Cir. 2003) (citing

Cook Inlet Treaty Tribes v. Shalala, 166 F.3d 986, 989 (9th Cir.1999) where this Court reiterated that "mootness is a jurisdictional issue, and 'federal courts have no jurisdiction to hear a case that is moot, that is, where no actual or live controversy exists.'")

Following the district court's declaratory judgment, the Board adopted Bylaw 9010.5 (2 EOR. 4, p. 33), which addresses and prevents the kind of Bible readings and proselytizing referenced in the declaratory judgment. The effect of Board Bylaw 9010.5 is to restrain the actions that Plaintiff-Appellees claim are actionable; board members are no longer capable of proselytizing or reciting irrelevant Bible verses during board meetings. Thus, the issue of Bible readings and proselytization is moot.

But there are exceptions to the mootness doctrine. For example, where the defendant's conduct is a wrong "capable of repetition, yet evading review," or when the defendant voluntarily ceases an allegedly illegal practice but is free to resume it at any time, then the issue is not moot. *Native Village of Noatak v. Blatchford*, 38 F.3d 1505, 1509 (9th Cir.1994). In general a case is not mooted if the defendant voluntarily ceases the allegedly improper behavior. *Native Village of Noatak*, 39 F.3d at 1510. But a statutory change is sufficient to moot an issue, even where the legislative body retains the power to reenact the statute after the lawsuit is dismissed. *Id*. at 1510.

In this case, Bylaw 9010.5 is sufficient to moot the issues of Bible readings and proselytization. The Bylaw is binding upon the Board and its members. There is no reason to believe that the actions would continue because the board members are subject to the policies and bylaws of the agency for which they serve. The mere fear that the Board will ignore its Bylaws is insufficient to create a reasonable expectation that the Bible readings or proselytization will continue. *Cf*, *Native Village of Noatak*, 39 F.3d at 1511 (Plaintiff's fear of future injury after legislature repealed the allegedly illegal statute, is insufficient to "constitute a reasonable expectation that the same alleged injury will occur.")

Therefore, this Court should reverse the district court's declaratory judgment because the alleged policy and custom of reading Bible verses and proselytization have been expressly repudiated and ceased by Bylaw 9010.5.

## V.    **Conclusion and Prayer.**

Defendant-Appellants respectfully move this Court to reverse the district court's order granting, in part, Plaintiff-Appellees' Motion for Summary Judgment, and denying Defendant-Appellants' Motion for Summary Judgment, because the invocation policy in this case is constitutional. Additionally, Defendant-Appellants pray that this court vacate the district court's injunction enjoining the board members from permitting prayer by members of the public during public comment, and vacate the declaratory judgment declaring the custom of Bible readings, and proselytization

unconstitutional because it is moot. In addition, Defendant-Appellants pray that this Court vacate the district court's judgment against Defendant-Appellants and order the district court to enter judgment in its favor on the Plaintiff-Appellees' First Amended Complaint.

Finally, Defendant-Appellants request that this Court grant them all further relief, special or general, at law or equity, to which they show themselves justly entitled, including but not limited to, vacating the district court's order granting Plaintiff-Appellees Motion for Attorneys' Fees (4 EOR. Tab 30) and awarding Defendant-Appellees' any and all costs to which they may be entitled.

Dated:  April 26, 2017                    Respectfully Submitted

                                          TYLER & BURSCH, LLP

                                          By:   s/Robert H. Tyler
                                             Attorneys for Defendants-
                                             Appellants, CHINO VALLEY
                                             UNIFIED SCHOOL DISTRICT
                                             BOARD OF EDUCATION; and
                                             CHINO VALLEY UNIFIED
                                             SCHOOL BOARD OF
                                             EDUCATION BOARD
                                             MEMBERS JAMES NA,
                                             SYLVIA OROZCO, CHARLES
                                             DICKIE, ANDREW CRUZ,
                                             IRENE HERNANDEZ-BLAIR,
                                             in their official representative
                                             capacities

## <u>CERTIFICATE OF COMPLETION</u>

1. This brief complies with the type-volume limitations of Circuit Rule 32-1 because this brief contains 13844 words, excluding the parts of the brief exempted by the Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because the brief has been prepared in a proportionally spaced typeface using Microsoft Word in fourteen-point Times New Roman.


Dated: April 26, 2017                    Respectfully Submitted

                                         TYLER & BURSCH, LLP

                                         By:   s/Robert H. Tyler
                                              Attorneys for Defendants-
                                              Appellants, CHINO VALLEY
                                              UNIFIED SCHOOL DISTRICT
                                              BOARD OF EDUCATION; and
                                              CHINO VALLEY UNIFIED
                                              SCHOOL BOARD OF
                                              EDUCATION BOARD
                                              MEMBERS JAMES NA,
                                              SYLVIA OROZCO, CHARLES
                                              DICKIE, ANDREW CRUZ,
                                              IRENE HERNANDEZ-BLAIR,
                                              in their official representative
                                              capacities

## <u>STATEMENT OF RELATED CASES</u>

1.    Plaintiff-Appellant is not aware of any related cases pending in this Court.


Dated:  April 26, 2017                    Respectfully Submitted

                                          TYLER & BURSCH, LLP

                                          By:   s/Robert H. Tyler
                                              Attorneys for Defendants-
                                              Appellants, CHINO VALLEY
                                              UNIFIED SCHOOL DISTRICT
                                              BOARD OF EDUCATION; and
                                              CHINO VALLEY UNIFIED
                                              SCHOOL BOARD OF
                                              EDUCATION BOARD
                                              MEMBERS JAMES NA,
                                              SYLVIA OROZCO, CHARLES
                                              DICKIE, ANDREW CRUZ,
                                              IRENE HERNANDEZ-BLAIR,
                                              in their official representative
                                              capacities

## <u>CERTIFICATE OF SERVICE</u>

I am employed in the county of Riverside, State of California. I am over the age of 18 and not a party to the within action. My business address is 24910 Las Brisas Road, Suite 110, Murrieta, California 92562.

☒ I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on April 26, 2017.

### APPELLANTS' OPENING BRIEF

Executed on April 26, 2017, at Murrieta, California.

☒ (Federal) I declare that I am a member of the Bar of this Court at whose direction the service was made.


_____s/ Robert H. Tyler_____
Email: rtyler@tylerbursch.com